Eastern District of Kentucky
FILED
DEC 29 2009
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY

SOUTHERN DIVISION

LONDON

ALI HADI SAWAF,

        Movant/Defendant,

vs.                             CIVIL ACTION FILE NO.

UNITED STATES OF AMERICA,        _____

        Respondent/Plaintiff.      (Crim. No. 6:01-CR-47).

---

## DECLARATION OF ALI HADI SAWAF

## IN SUPPORT OF HIS MOTION FOR HABEAS CORPUS.

COMES NOW, Movant Ali Hadi Sawaf, who swears and deposes as follows:

1.    My name is Ali Hadi Sawaf. I am older than the age of 18 years and am competent to give this Declaration in support of my Motion for Habeas Corpus, based upon my own personal knowledge of the facts described.

2.    Before and during my trial, sentencing, and initial appeals in the criminal case, I was represented by attorney Russell Alred. I was convicted of 8 counts of dispensing controlled substances, as a doctor, without a legitimate medical purpose and outside scope of practice.

3.    Mr. Alred visited me at the jail in London, Kentucky in late September or early October 2001. One of the issues we discussed during this visit was a plea bargain offer the Government

1

had made to me. During this visit, we met in the jail barber shop, which is also used as the attorney visiting room. Mr. Alred sat in the old swivel barber chair and we smoked Marlboro Light cigarettes. Mr. Alred stated that the Government had made a plea offer, pursuant to which they wanted me to plead guilty to Count 1 of the Indictment and serve 44 months in prison (with credit for the months I had already spent in jail). In exchange, the other Counts of the Indictment would be dismissed, and I would serve the balance of the sentence in the Camp at F.C.I. – Manchester, Kentucky. Mr. Alred told me that this sentence was based upon the Government using a "pill count" number of 11,000. Mr. Alred did not explain to me how much time in prison I was facing if I was convicted at trial. When I asked Mr. Alred's advice about whether I should consider taking the Government's plea offer, he gave a short answer: "You would be the one doing the time, not me." I asked Mr. Alred to try to negotiate with the Government for a shorter amount of time in prison, and he said that he would.

4.  Shortly before the Pre-Trial Conference set for November 2001, Mr. Alred again visited me in the London jail. He advised me that Asst. U. S. Attorney Roger West had offered to reduce the recommended prison sentence to 41 months from 44 months, but that was the best offer he could make, because he had to answer to his boss, the U. S. Attorney. I asked Mr. Alred how the government had arrived at the proposed 41 month sentence. He stated that the Government had calculated that proposed sentence by reducing the "pill count" to 3,000. I then asked Mr. Alred whether I would have to serve the entire 41 months, or would the sentence be subject to reduction for earned good conduct credit. Mr. Alred stated that I would have to serve the entire 41 months. Again, Mr. Alred failed to inform me about the length of sentence I was facing if I went to trial and was convicted. I advised Mr. Alred that 41 months was still too much time, and asked him to try to negotiate for a shorter sentence, 37 months.

2

5. I heard nothing more about the plea negotiations until the court appearance where Judge Jennifer Coffman designated Judge Karen Caldwell to try my case. At the end of the hearing, I stood to leave. Mr. Alred was standing to my left. AUSA Roger West approached and spoke to me in Mr. Alred's presence. Mr. West stated, "Look doctor, I am offering you a 41 month plea deal. I will see that you serve your time at the Manchester camp. You are an educated and intelligent man. You should take the plea offer." I asked Mr. West how he knew this about me, and he said from listening to the tapes. I asked Mr. West how he had arrived at a proposed 41 month plea offer; I asked him what quantity of pills he had used in the calculation. Mr. West said, "I don't make those calculations. They would be made by the Probation Department." Mr. West then held up a copy of the Indictment and said, "Look, if you are convicted just on Count 1, you will be sentenced to 10 to 12 years." When I did not respond, Mr. West walked away. After he had left, Mr. Alred stated that Mr. West was trying to intimidate me because he was not prepared to go to trial. Again, Mr. Alred did not tell me the length of sentence I was facing if I was convicted at trial.

6. Mr. Alred never confirmed or denied to me whether I might really be facing the 10 to 12 year sentence Mr. West had threatened. Mr. Alred never advised me that the statutory maximum sentence if I was convicted at trial on the drug charges would be at least 20 years, and that I could realistically be facing 20 years in prison. Mr. Alred did not mention to me before I was convicted that the gun charges might carry mandatory consecutive 5 year sentences either. I trusted Mr. Alred's judgment and legal knowledge, but he never suggested that I should accept the Government's 41 month plea offer, or advised that I might be sentenced to 20 years if I went to trial and was convicted. If Mr. Alred had advised me that I was facing a 20 year sentence if I

was convicted just on some (not even all) counts at trial and suggested that I should seriously consider taking the plea offer, I would have accepted it and pleaded guilty.

7. Mr. Alred stated that he, "wished I had known you before you got into this trouble. I would have warned you about the dirty police in Harlan and told you to beware of them. They are bad people. They entrapped you. I intend to argue that you were entrapped and that it is illegal to entrap a doctor. In Court before my trial, Mr. Alred opened a law book and showed me the chapter in it on "entrapment". He specifically pointed out the U. S. Supreme Court's decision in United States v. Sherman, 358 U.S. 359 (1958). I asked Mr. Alred, "Did I really commit a crime, or am I just being prosecuted for political reasons." Mr. Alred responded, "It is politically motivated. You didn't do anything wrong."

8. Mr. Alred smiled and was pleased when Judge Caldwell ruled that she would permit him to argue the "entrapment" issue to the jury. He told me several times before trial and then, "I will get you acquitted." Even after I was convicted at trial and while he was working on my direct appeal, Mr. Alred continued to tell me, "Doc, I will get you exonerated." After my sentence was vacated on the initial appeal, but before my second sentencing hearing, I spoke with Mr. Alred by telephone from the McCreary County Prison. I asked him what he thought the result would be at my re-sentencing hearing. Mr. Alred stated, "I will get you out of prison. You will go home with time served. I will work it out with Roger West." When I was re-sentenced to 20 years again, I asked Mr. Alred whether he had ever sat down and talked with Roger West. He stated that he had. As we were walking out of the Courtroom following my second sentencing, Mr. Alred stated to me, "Doc, I should have followed your suggestion about getting some of the other area doctors and more patients to testify for you." Prior to trial, I had told Mr. Alred that he should get an expert doctor to testify on my behalf. Mr. Alred stated that

4

it would be expensive to get an expert doctor witness, and the Judge would not give us the money to do it. Before and during trial, I specifically asked Mr. Alred to subpoena my former doctor colleagues from the Daniel Boone Clinic, where I practiced for two years prior to opening my own practice, but he refused to do so. I gave Mr. Alred the names of four specific doctors to speak with about testifying on my behalf before trial, but he never contacted any of them. Those doctors are: 1) Dr. Fazil Ahmad, a Board Certified General Surgeon; 2) Dr. Jameil Butt, a Board Certified General and Colorectal Surgeon; 3) Dr. Samir Guindi, a Board Certified Ear, Nose and Throat Surgeon; and 4) Dr. Dallol, a Board Certified Cardiologist, who left Harlan in 2002 for Ohio.

9. After I was convicted and prior to sentencing, Mr. Alred and I met with a woman from the Probation Office, so that she could interview me for purposes of preparing the Pre-Sentence Report ("PSR"). After the Probation Officer left that meeting, I asked Mr. Alred, "Do you think I will get the 37 month sentence that I had hoped Roger West would agree to in a plea deal?" Mr. Alred stated, "You will get less than 37 months." I was surprised to hear Mr. Alred tell the Judge near the end of my first 2 sentencing hearings that my case was his first ever Federal criminal case. Mr. Alred never contested the factual basis for the 87,600 pills that were ultimately used as "relevant conduct" to give me a 20 year sentence. Only 420 of those pills (300 Oxycontin, 60 Tylox and 60 Vicodin) were based upon the 8 counts of conviction. Before my second sentencing hearing, Mr. Alred advised me that I would receive a five year sentence, but his prediction turned out not to be true again. Before my sentencing, Mr. Alred told me that he did not know about or understand the Federal Sentencing Guidelines, but that he had just spent several hundred dollars [I think he said $380] on books about Federal Criminal Law and/or the Federal Sentencing Guidelines.

5

10. Paragraph 31 of the PSR states that based upon the "pill count" of 87,600 in the "Offense Conduct" section, the pills I "distributed" corresponds to a marijuana equivalency of 8,683.38 kilos. This corresponds to a based offense level of 34 (between 3,000 and 10,000 kilos of marijuana). Mr. Alred failed to properly object to the pill count calculation on the grounds that it lacks reasonable indicia of factual reliability and accuracy. Mr. Alred's objections failed to address the factual accuracy of the statements made in the PSR to support the pill count. Neither the Probation Officer nor the Court made individual determinations concerning the facts surrounding how and why each prescription was written for each patient, based upon that patient's file. Mr. Alred failed to object that the PSR failed to state or reveal why (factual basis for concluding that) the individual prescriptions Dr. Sawaf had written had no legitimate medical purpose, and were not dispensed within the usual course of his medical practice. Neither the Probation Officer, the PSR, nor the Court considered the individual patients' cases, the date and reason each prescription was written, the type and dose of drug and whether the individual prescriptions were written without a legitimate medical purpose and outside the scope of practice. Mr. Alred failed properly to object to the "pill count" calculation at sentencing. See, 8/23/2002 Transcript, p. 14, lines 23-25. If Mr. Alred had made specific objections, then the sentencing court would have had to make factual findings to support its ruling on the pill count, per Federal Rule of Criminal Procedure 32(i)(3)(B). **I declare under penalty of perjury pursuant to 28 U. S. C. § 1746 that the foregoing is true and correct.**

Executed this 21 of
December, 2009.

Ali Hadi Sawaf, Declarant

6

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of December, 2009, I filed the herein with the Clerk of the Court. A copy was served via US Mail, postage prepaid on this the 29th day of December, 2009, upon the following:

Roger West, Esq.
Assistant United States Attorney
260 West Vine Street, Ste. 300
Lexington, Kentucky 40507
Counsel for Plaintiff

_____
C. WILLIAM SWINFORD, JR., ESQ.