UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALI HADI SAWAF,<br><br>    Defendant. | CRIMINAL ACTION NO. 6:01-47-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on defendant Ali Hadi Sawaf's Motion for Writ of Error Coram Nobis (DE 295). For the following reasons, Sawaf's Motion is DENIED.

## I.  FACTUAL BACKGROUND

Sawaf was indicted in June of 2001 on eleven counts of unlawfully distributing controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 841(a) and 841(b)(1)(C) ("CSA"). In January of 2002, Sawaf was convicted by a jury of eight of those counts.

During his trial, the Court heard testimony from doctors, pharmacists, Sawaf's patients and employees, law enforcement officers, and medical experts. *United States v. Sawaf*, 129 F. App'x 136, 138 (6th Cir. 2005). The testimony revealed that Sawaf issued an exceptionally large number of prescriptions for controlled substances during his practice from August 2000 to February 2001. *Id*.

Testimony ay trial reflected that Sawaf was asked to leave the first office he borrowed from Dr. Alan Freid after Dr. Freid discovered that his in-office pharmacy was "literally running out of controlled substances" because Sawaf was issuing prescriptions to patients on an "unbelievable scale." *Id.* Pharmacist Joe Myers testified that he could not keep up his supply of controlled

substances because Sawaf wrote so many prescriptions. Myers stated that Sawaf's prescriptions became "more and more frequent with more repetition of patients" and without explanation on the prescription forms that he filled out. *Id.* Another pharmacist named Jon McNiel testified that he noticed patrons were coming in often with prescriptions for Oxycontin from Sawaf. *Id.* Pharmacist Ed Carlton testified that he stopped filling prescriptions from Sawaf because "I didn't feel that any one physician could humanly see that many patients and put out that many [prescriptions] and do it thoroughly and correctly in a single day." *Id.* Sawaf's employees testified that he rarely performed medical check-ups and invariably prescribed controlled substances to patients. *Id.*

Records showed that one pharmacy filled three of Sawaf's prescriptions in September of 2000, five in October of 2000, twenty-two in November of 2000, and over 1000 prescriptions between December of 2000 and January of 2001. Those prescriptions for Schedule II drugs included: 5,870 Oxycontin 40- milligram pills; 3,600 20-milligram Oxycontin pills; 300 10-milligrams Oxycontin pills; 3,095 dosage units of Tylox; 570 dosage units of methadone; 1,010 dosage units of Roxicet; approximately 1,600 dosage units of Percocet; 195 dosage units of Percodan; and 60 dosage units of Seconal.

At the conclusion of Sawaf's trial, the Court read instructions to the jury. The jury instructions for all eight counts of conviction followed the same template: Sixth Circuit Pattern Jury Instruction 14.02C. (*See* DE 59 Jury Instruction Nos. 14, 16–18, 21–24.) That instruction read, "For you to find the defendant guilty of this crime, you must first find that defendant has committed each and every one of the following elements beyond a reasonable doubt: (A) The defendant knowingly [or intentionally] dispensed [or distributed] [name of controlled substance]; and (B) The defendant knew at the time of dispensing [or distributing] that the substance was a controlled substance; and (C) The defendant's dispensing [distribution] was unauthorized, that is

2

to say the dispensing [distribution] was not for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." (*See* DE 295 at 15–16.)

After hearing the instructions, the jury found Sawaf guilty on eight counts and he was sentenced to 240 months imprisonment. Sawaf testified at trial that the pain medications were prescribed for legitimate medical purposes and has maintained his innocence to this day. (DE 307 at 7.) Thereafter, Sawaf engaged in a series of appeals challenging his sentence. Sawaf's sentence, however, never changed. In November of 2009, Sawaf filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2255. This Court denied Sawaf's petition but was reversed by the Sixth Circuit in June 2014. Thereafter, Sawaf was resentenced to time served, and was released. Sawaf's new sentence imposed a three-year term of supervised release, which he completed in September of 2017.

In September 2023, Sawaf filed a motion for a writ of coram nobis (DE 295). A writ of coram nobis is generally used to vacate a federal sentence or conviction by a petitioner who is out of federal custody. *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996). Sawaf argues that his convictions should be vacated because the Court tendered erroneous instructions to the jury during his 2002 trial. (DE 295 at 10-25.) More specifically, Sawaf claims that the Court's instructions for the *mens rea* element of his convictions arising under the CSA were flawed. (*Id*. at 1.)

Sawaf's argument takes root in the 2022 Supreme Court decision *Xiulu Ruan v. United States,* 597 U.S. 450 (2022). The Supreme Court held that for a medical practitioner to be convicted under §841 of the CSA, the government must prove that the "defendant knew or intended that his or her conduct was unauthorized." *Id.* at 467. As a result of the *Ruan* decision, Pattern Jury Instruction 14.02C was revised. The updated instruction now includes section (D), which requires

3

that the defendant "knew [or intended] that his dispensing [distribution] was unauthorized." Sawaf argues that *Ruan* has retroactive effect, and since the jury in his case was not properly instructed, it resulted in a "fundamental error, a complete miscarriage of justice and the conviction of an innocent man." (DE 295 at 1.)

In response, the United States argues that, notwithstanding *Ruan*, Sawaf failed to show a fundamental flaw in his criminal proceedings that would warrant a writ of error coram nobis because no error occurred during the proceedings that calls the validity of his conviction into doubt. (DE 307 at 1.) Specifically, although the jury instructions did not use the word "unauthorized" as required by *Ruan*, the jury was still instructed that it had to find Sawaf "intended to distribute or dispense and did distribute or dispense" controlled substances "without legitimate medical purpose and not in the usual course of professional medical practice." (DE 307 at 7–8.) The government contends this language satisfies *Ruan*'s standard. (*Id.*)

## II. DISCUSSION

### A. Applicability of *Ruan v. United States* to this Case

The Supreme Court reasoned that to establish *mens rea*, it is insufficient for the government to prove that a defendant acted without "a legitimate medical purpose" or outside the "usual course" of generally recognized "professional practice." *Ruan*, 597 U.S. at 467. Rather, they must also prove that the medical practitioner knew the dispensing was unauthorized. *Id.* However, proof that a defendant acted outside of a legitimate medical purpose is, "circumstantial evidence" that may be used to prove knowledge of a lack of authorization. *Id.* Certainly, "the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." *Id*.

4

Sawaf is correct that the decision has a retroactive effect, but that does not mean that the Court's original jury instruction automatically fails to adhere to *Ruan*. The government's arguments in *Ruan* are very similar to the ones made by the United States in this case. In *Ruan,* the government argued that the defendants' convictions should be confirmed because the jury instructions at their trials conveyed the requisite *mens rea,* and even if they didn't, it constituted harmless error. *Id.* The Supreme Court declined to decide whether the jury instructions in that case complied with the standard set by their decision. *Id.* This was because the Court of Appeals evaluated the jury instruction under an incorrect understanding of § 841 of the CSA. *Id.*

What is implied from *Ruan* is that a court *can* retrospectively determine whether the instructions satisfy the new standard. In *Ruan,* the Supreme Court declined to make that determination and left it to the lower courts to review their decisions in light of the new ruling. In our case, that issue is not present. The *Ruan* standard is clear and the Court can apply the new standard to the 2002 jury instructions. Importantly, the Court may consider evidence that Sawaf acted without a legitimate medical purpose as circumstantial evidence that he knew his conduct was unauthorized. Accordingly, the Court will determine whether issuing a writ of coram nobis is appropriate in this case.

### B.  Coram Nobis

A writ of coram nobis is available in criminal cases under the All Writs Act, 28 U.S.C.A. § 1651(a). *United States v. Morgan*, 346 U.S. 502, 514 (1954). The writ provides a vehicle to collaterally attack a criminal conviction for a person who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241. *United States v. Castano*, 906 F.3d 458, 462 (6th Cir. 2018). Coram nobis is an "extraordinary writ that may be used to vacate a federal sentence or conviction." *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012).

In order to merit the extraordinary remedy of *coram nobis,* a petitioner must demonstrate (1) an error of the most fundamental character that, if corrected, probably would have altered the outcome of the trial; (2) the lack of alternative remedy; (3) the existence of an ongoing civil disability and (4) sound reasons for failure to seek appropriate earlier relief. *Castano,* 906 F.3d at 464. The touchstone question is whether extraordinary circumstances compel issuance of the writ to achieve justice. *Id.* at 464.

The writ of coram nobis is allowed only in the rarest of cases. *See United States v. Denedo*, 556 U.S. 904, 911 (2009) (noting importance of limiting writ to truly extraordinary circumstances "so that finality is not at risk in a great number of cases"); *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (noting that "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate"); *Castano*, 906 F.3d at 462 ("To protect the finality of judgments, coram nobis is limited to extreme cases in which there were fundamental flaws in the proceedings.") (internal quotations omitted); *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001) ("*Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental character--*e.g.*, errors rendering the proceedings themselves invalid.").

In his motion, Sawaf fails to demonstrate that the jury's decision would have been different if the jury instructions had included an additional element as required by *Ruan*. The government's proof showed that Sawaf prescribed controlled substances without a legitimate medical purpose and not in the usual course of professional medical practice. Sawaf testified in his own defense and denied any intent to prescribe controlled substances without a legitimate medical purpose. In order to convict him for violating § 841 of the CSA, any jury would have considered whether Sawaf's unauthorized dispensing of controlled substances was knowing or intentional.

6

Sawaf argues that the 2002 jury instructions were deficient because they failed to require proof beyond a reasonable doubt that his conduct was unauthorized, as now reflected in Pattern Instruction 14.02C(1)(D). (DE 295 at 21.) Sawaf fails to consider that in his situation, the overwhelming evidence detailing his prescribing of controlled substances is evidence the government could have used to prove that he also knew that the dispensation was authorized.

At trial, the evidence established that Sawaf knew he was dispensing controlled substances and that they were not prescribed for a legitimate purpose and not in the usual course of his professional practice. Testimony from law enforcement, former employees, physicians and pharmacists shared that Sawaf understood such prescriptions were unauthorized.

The testimony of Dr. Freid and Pharmacist Carlton is the most revealing. Dr. Freid asked Sawaf to leave his office because Sawaf was writing prescriptions at such an "unbelievable scale" that he was "literally running out of controlled substances" and Carlton noted that no physician could "humanly see that many patients and put out that many [prescriptions] and do it thoroughly and correctly in a single day." *Sawaf*, 129 F. App'x at 138. Given that Sawaf was found guilty beyond a reasonable doubt of knowingly and intentionally distributing controlled substances without a legitimate medical purpose and outside the usual course of professional medical practice, it is highly unlikely the jury would have reached a different verdict under the *Ruan* standard.

Even though the Court's instructions did not include the precise language of the newly-added section (D) of Jury Instruction 14.02C, the Court instructed the jury that they had to find the essence of the Ruan term: that Sawaf "intended to distribute or dispense and did distribute or dispense" controlled substances "without legitimate medical purpose and not in the usual course of professional medical practice." (*See e.g.,* DE 59: Jury Instruction No. 14.) Given the circumstances of Sawaf's case and the overwhelming evidence at trial of distributing controlled

7

substances, a jury probably would not have reached a different conclusion, even with the new "knowledge that the dispensation was unauthorized" prong.

*Ruan* expressed that the government could prove knowledge of authorization via circumstantial evidence and the reasonableness of the defendant's beliefs. 597 U.S. 450 at 467. In this case, there is more than enough direct and circumstantial evidence of Sawaf's knowledge and beliefs. The sheer volume of prescriptions Sawaf issued within just a few months is, by itself, suspicious. When combined with the fact that he issued most of them without physically examining the patients, there is ample circumstantial evidence to prove that he knew his conduct was unauthorized. Additionally, multiple medical professionals testified that they were uncomfortable with the volume of prescriptions Sawaf issued, further undermining any claim that he reasonably believed his actions were lawful. Therefore, it is unlikely that the jury instructions, if corrected, probably would have altered the outcome of the trial.

### III.  CONCLUSION

Because the evidence surrounding Sawaf's prescriptions presented at Sawaf's trial was supported by overwhelming evidence, the jury's verdict would probably not have changed even if read the post-*Ruan* Jury Instruction 14.02(D). Accordingly, this Court hereby ORDERS that Sawaf's Motion for Writ of Error Coram Nobis (DE 295) is DENIED.

This 6th day of October, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY